IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SABELLE TALARIGO, Administratrix | : | CIVIL ACTION |
| of the Estate of Anthony Talarigo, | : | |
| Deceased, and in her own right | : | |
| | : | |
| v. | : | |
| | : | |
| PRECISION AIRMOTIVE CORP., et al. | : | NO. 06-2885 |

ORDER AND OPINION

JACOB P. HART                                                            DATE:   October 25, 2007
UNITED STATES MAGISTRATE JUDGE

      This action arises from a June 2, 2004, aircraft accident which killed Anthony Talarigo. Sabelle Talarigo, ("Talarigo"), Mr. Talarigo's widow and the personal representative of his estate, originally sued the manufacturers of the aircraft's engine, the manufacturers of the carburetor in that engine, the manufacturers of replacement parts of the carburetor, and the companies that performed overhaul and maintenance work on the aircraft's engine.

      Talarigo has settled with many of the defendants, but not with Kelly Aerospace, Inc., and Consolidated Fuel Systems, Inc., (related entities collectively referred to as "Kelly"), which manufactured the replacement parts for the carburetor. In this motion, Talarigo seeks to obtain from Kelly certain documents in discovery. For the reasons that follow, I will grant her motion with some modification, as discussed below.

I.      <u>Categories 1, 4, 5, 6 and 8</u>

      In this motion as originally filed, Talarigo sought the production of eight different categories of documents. Subsequently, the parties resolved their differences as to categories 1, 4, 5, 6 and 8. Letter from Plaintiffs' Counsel, attached as Exhibit I to Kelly's Response. For that reason, I will dismiss the parts of Talarigo's motion pertaining to these categories as moot.

II.   Categories 2, 3 and 7

A.   Category 2

Document Request No. 48: [Please produce] all service difficulty reports, incident reports, accident investigation reports, malfunction and defect reports, incident reports, accident investigation reports, customer support and warranty documents, or any other document whatsoever which in any manner relates to problems with failures of carburetors equipped with replacement parts manufactured and/or sold by you. The said request shall include responsive documents received from any and all entities including litigants and service providers.

The carburetor in Talarigo's aircraft was manufactured by Precision Airmotive, LLC, ("Precision"), and was model number MA4-S5. As noted above, Kelly makes replacement parts for Precision carburetors. In response to this document request, Kelly has refused to produce documents relevant to any carburetor other than MA4-S5. Talarigo, however, has now requested that Kelly provide documents concerning another Precision carburetor model, MA4-SPA.

According to Talarigo, the MA4-SPA is simply a smaller model of the MA4-S5. She has explained that both carburetors regulate the amount of fuel in the engine by means of a brass float lever pontoon. It operates similarly to the floating ball in a toilet tank that regulates the flow of water, and shuts it off with a plug when the correct level is reached. In the case of a carburetor, a floating pontoon plugs a brass seat with a stainless steel needle when the engine has received the right amount of fuel.

Talarigo has attached to her reply in this motion an expert report issued by Donald E. Sommer, PE, an engineer. Exhibit B to Talarigo's Reply. In his report, Mr. Sommer opines that the carburetor in Mr. Talarigo's aircraft failed because the float pontoon dragged against the side of the carburetor bowl and caused an interruption of a proper mixture of air and fuel to the engine. Id. at 7-8. He also maintains that the carburetor lock tab washers that secure the throttle

body to the bowl screws are defective because they spring back and allow the screws to loosen. Id.

In reviewing consumer complaints, Mr. Sommer looked at material concerning both MA4-5 and MA-4SPA carburetors, calling them "substantially similar." Id. at 7.  He wrote: "That list contains numerous reports showing that loose bowl screws and worn and dragging floats are something that has been happening in these carburetors for quite some time and with great frequency." Id.

Kelly argues that the MA4-SPA is so different from the MA4-S5 that any information about the MA4-SPA is irrelevant to this case.  It has attached an affidavit from Randall Knuteson, Director of Products Support and International Sales for Kelly Aerospace Power Systems, a subsidiary of Kelly Aerospace, Inc.  Knuteson avers:

> There are significant differences between these two carburetors.  For example, they are not comprised of the same subcomponents.  Further, the dimensions of the two carburetors in throat size and bowl volume and in mounting configurations, as well as the dimensions and operating clearances of some of the subcomponents, are not the same.  There is no continuity in fit and form between these two models.

Affidavit of Randall Knuteson, attached as Exhibit II to Kelly's Response.

Talarigo, however, has pointed to two questionable aspects to Knuteson's affidavit.  First, Knuteson is not an engineer.  Although he has worked in aviation for over twenty years, and has a repairman's certificate, his only academic degree is in public speaking.  Knuteson Deposition Excerpt, attached as Exhibit C to Talarigo's Reply, at 6-7.  Secondly, Knuteson has not specifically explained how the differences to which he points would mean that the defects alleged in Talarigo's MA4-S5 could not occur in an MA4-SPA.

I conclude that Kelly has not successfully rebutted Talarigo's argument that the two carburetors are similar enough that reports involving MA4-SPA malfunctions are relevant to this case. For this reason, I will direct Kelly to produce the documents sought by Talarigo with respect to Category 2.

B.   Category 7

I will discuss this category next, because it also relates to the MA4-SPA carburetor. The request at issue, Document Request 40, seeks "Any and all documents exchanged between you and the Federal Aviation Administration concerning AD-93-19-04."

AD-93-19-04 is an Airworthiness Directive issued by the FAA in 1993, which referenced a number of carburetors, including MA-4SPA (but not MA4-S5). Airworthiness Directive, attached as Exhibit E to Talarigo's Motion. It directed the removal of Kelly's carburetor float assembly from these carburetors "to prevent a disruption of fuel flow to the engine, resulting in engine power loss, engine failure, and damage to the aircraft." Id.

This information is relevant to determining what notice Kelly might have had of a flaw in the design of some of its carburetor float assemblies that could also exist in other models. I will direct Kelly to produce this material.

C.   Category 3

Document Request No. 41: [Please produce] any and all documents exchanged between you and the holder of Parts Manufacturer Authorization of the MA-4-5 Marvel Schebler carburetor concerning the safety, durability, compatibility, failure, and malfunction of any CFA 10-3965-12 carburetor replacement part manufactured and/or sold by you.

Talarigo has explained that by "holder of Parts Manufacturer of the MA-4-5 Marvel Schebler carburetor, " she is referring to Precision.  In 1992, Precision issued a Service Bulletin which recommended the removal of Kelly parts from its carburetors.  Mr. Knuteson testified at his deposition that this was only a move designed to shut out Kelly, its competitor in the sale of replacement parts:  "Kelly has communicated with Precision some time ago concerning a bulletin that stated that the end-user could not use FMA-PMA approved products [such as Kelly's replacement parts] because, according to Precision's mindset, those are unauthorized parts.  And that was clearly a marketing approach, if you will."  Exhibit C, supra, at 46-48.

Talarigo argues that she cannot determine whether there was a real safety issue, or only a marketing dispute, unless she can see the correspondence.  The problem, of course, is that a party is only entitled to discover materials relevant to a party's claim or defense.  Fed. R. Civ. Pr. 26(b)(1).  Talarigo is not entitled to look through all possibly interesting material, deferring the issue of relevance.

I will therefore direct Kelly to produce only those parts of its correspondence with Precision which specifically reference safety, engineering specifications, and/or the functioning of a carburetor, engine, or aircraft.  Kelly is not obligated to produce correspondence responsive to this request which does not refer to any of these things.  It may also redact out irrelevant portions of discoverable documents.

III.     Conclusion

For the reasons set forth above, I now enter the following:

O R D E R

AND NOW this     25th     day of October, 2007, upon consideration of Plaintiff's Motion to Compel Production of Documents From Defendants Kelly Aerospace and Consolidated Fuel Systems, filed in this matter as Document No. 80; Defendants' response thereto, and Plaintiff's reply, it is hereby ORDERED that Plaintiff's Motion is GRANTED. Within ten days of the date of this Order, Defendants shall produce to Plaintiff:

1. All warranty claims for the MA4-SPA carburetor;

2. All correspondence with the FAA concerning AD-93-19-04; and

3. Communications between Kelly and Precision which (a) concern Precision's 1992 Service Bulletin and (b) specifically reference safety, engineering specifications, and/or the functioning of a carburetor, engine or aircraft.

All other portions of Plaintiff's Motion are DISMISSED AS MOOT.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE